**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KATHLEEN KRAJKOVICH and ALEXIS RIVERA,** | : | **CIVIL ACTION NO. 3:22-CV-1912** |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BLAKELY BOROUGH, PETER PETRUCCI, AVENTURA AT TERRACE VIEW, LLC, and DAWN FERGUSON,** | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Plaintiffs Kathleen Krajkovich and Alexis Rivera bring this lawsuit under 42 U.S.C. § 1983 against their former employer, nursing home operator Aventura at Terrace View, LLC ("Aventura"); Aventura's Director of Nursing, Dawn Ferguson; Blakely Borough; and borough Police Officer Peter Petrucci.  Plaintiffs claim Ferguson and Officer Petrucci unlawfully conspired to have plaintiffs arrested and prosecuted based upon false charges of neglecting to care for a nursing home resident.  Defendants move to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim.  We will grant in part and deny in part defendants' motions.

**I.    <u>Factual Background & Procedural History</u>**

    **A.    Plaintiffs' Employment with Aventura**

Aventura owns, operates, and staffs a nursing home—the aptly named Aventura at Terrace View—located in Peckville, Pennsylvania.  (<u>See</u> Doc. 1 ¶ 9).

The Peckville facility offers "subacute rehab, long term skilled nursing, dementia memory care, and hospice" services.  (See Aventura at Terrace View, *About Us*, www.aventuraatterraceview.com/about-us (last visited Oct. 5, 2023)).  At the time of their termination in 2022, Krajkovich had worked at the Peckville facility as a licensed practical nurse ("LPN") for more than thirty years and Rivera served as a certified nurse assistant ("CNA").  (See Doc. 1 ¶¶ 19, 36, 46, 90).  Ferguson was their supervisor.  (See id. ¶ 10).

Plaintiffs aver Aventura suffers from "chronic staffing issues."  (See id. ¶ 52).  CNAs assigned to residential units at the Peckville facility generally are responsible for bathing and grooming residents, monitoring the condition of their skin, and maintaining logs of these tasks.  (See id. ¶¶ 31-33, 49, 52).  LPNs review logs for completeness and only physically assess residents if CNAs note problem areas.  (See id. ¶¶ 34-35).  Aventura assigned plaintiffs to a unit with more than 55 residents.  (See id. ¶ 52).  The experience of one of those residents is central to plaintiffs' lawsuit.

### B.    Hospitalization of Carmella Mecca

Carmella Mecca—an 88-year-old woman with severe dementia who habitually clenched her fists for nearly half-a-decade—was a resident of the Peckville facility in the spring of 2022.  (See id. ¶¶ 18, 22).  Her care team included occupational and physical therapists, doctors, and various nurses.  (See id. ¶ 51).  Mecca had a well-documented history of refusing to let anyone care for her hands or trim her fingernails; she would become "agitated, irate, and combative" anytime someone touched her hands.  (See id. ¶¶ 23-24).  Per Aventura policy, employees are

not permitted to forcibly move a part of a resident's body, including their fingers or palms. (See id. ¶¶ 43, 44).

On April 19, 2022, Rivera attempted to clip Mecca's nails, supposedly for the first time, but could not clip all of them because Mecca had clenched her fist. (See id. ¶¶ 36-37, 39). Rivera did not observe any other issues with Mecca's hand, so when she completed her logs, she noted only that Mecca's nails were clipped. (See id. ¶¶ 36, 45). Plaintiffs aver Rivera filled out the forms correctly and truthfully under the circumstances. (See id. ¶ 36). None of the "countless" employees who cared for Mecca on other shifts and were required to monitor her skin documented any problems with her hand. (See id. ¶¶ 41, 47-50). As a result, neither Krajkovich nor any other LPN on duty during her days off personally assessed Mecca to determine whether she had any wounds. (See id. ¶¶ 40-41, 46-48).

On April 25, someone at the facility noticed a necrotic odor emanating from Mecca's hand and had her transported to the emergency room. (See id. ¶ 20). Apart from her malodorous hand, Mecca appeared to be okay. (See id. ¶ 21). Emergency room doctors needed help to restrain Mecca for examination. (See id. ¶ 26). After forcibly unclenching Mecca's fist, doctors discovered her fingernails had broken the skin of her palm and became embedded; the wound was not visible while Mecca clenched her fist. (See id. ¶¶ 25, 27, 28, 42). Plaintiffs claim it would have taken six to ten months for Mecca's nails to grow as long as they had when she was admitted. (See id. ¶ 38). Doctors washed the festering wound and treated it with an antibiotic. (See id. ¶ 29).

### C.      Investigations and Arrest

Ferguson initiated an internal investigation following Mecca's hospitalization.  (See id. ¶ 30).  She retrieved some of Mecca's skin integrity assessment logs, but could not find all of them; she also reviewed shower logs.  (See id. ¶¶ 31-32).  The logs showed Rivera had been responsible for cutting Mecca's nails the week she was admitted to the hospital.  (See id. ¶¶ 36, 39).

The Blakely Borough Police Department commenced its own criminal investigation under the direction of Officer Petrucci, who met with Ferguson "on numerous occasions" at the Pikeville facility.  (See id. ¶¶ 53, 82).  The pair exchanged information and discussed filing criminal charges against plaintiffs.  (See id. ¶ 82).  Ferguson informed Officer Petrucci that Rivera, Krajkovich, and one other person were responsible for Mecca's hospitalization.  (See id. ¶ 54).  Plaintiffs claim Ferguson withheld the names of other employees who cared for Mecca because she knew it would lead to plaintiffs' prosecution.  (See id.)  Ferguson also purportedly "cherry-picked" the medical records she shared with Officer Petrucci and gave false information to incriminate plaintiffs.  (See id. ¶¶ 55-56).  For example, plaintiffs allege Ferguson falsely told Officer Petrucci LPNs were responsible for conducting skin assessments regardless of whether CNAs had noted a problem and that the facility had issued a "palm grip order" for Mecca; Ferguson later repeated these supposed falsehoods at plaintiffs' preliminary hearing.  (See id. ¶ 60).  Officer Petrucci did not subpoena additional records from Aventura despite knowing Ferguson failed to provide everything in her possession.  (See id. ¶ 58).  Plaintiffs believe Ferguson conspired with Officer Petrucci to lie about them in order to

"shield herself and [Aventura] from liability for systemic failures, staffing shortages, and other" shortcomings.  (See id. ¶¶ 61, 83).  Plaintiffs further suggest Ferguson did so at Aventura's direction.  (See id. ¶¶ 61, 94).

On July 18, Officer Petrucci initiated criminal proceedings against plaintiffs for neglect of a care dependent person in violation of 18 PA. CONS. STAT. § 2713(a).  (See Doc. 1 ¶¶ 12, 63).  Plaintiffs claim he did so without probable cause to believe they failed to render care or even possessed the requisite *mens rea* to commit the charged offense.  (See id. ¶¶ 59, 63-65).  Plaintiffs were arraigned, "placed on restricted bail conditions," and "forced to retain" counsel.  (See id. ¶¶ 13-14).  They claim their reputations suffered due to numerous media outlets reporting on their arrests.  (See id. ¶ 15).  Aventura eventually fired them.  (See id. ¶ 16).  Plaintiffs proceeded to a preliminary hearing on November 16, following which the magisterial district court dismissed the charges for lack of probable cause.  (See id. ¶¶ 17, 18; see also id. ¶ 60).

**D.   Procedural History**

Plaintiffs filed their complaint on December 2, 2022.  They raise the following claims: false arrest and malicious prosecution against Officer Petrucci pursuant to Section 1983 (Counts II and III, respectively); civil conspiracy under Section 1983 and common-law malicious prosecution against Officer Petrucci and Ferguson (Counts IV and V, respectively); municipal liability against Blakely Borough pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) (Count I); intentional infliction of emotional distress against Ferguson (Count VI); and vicarious liability against Aventura based on the claims against Ferguson (Count VII).  Plaintiffs seek

punitive damages and compensation for, *inter alia*, emotional pain and suffering, lost wages and employment, embarrassment and humiliation, and reputational harms.  Defendants move to dismiss the complaint for failing to state a claim.  The motions are fully briefed and ripe for disposition.

## II.   <u>Legal Standard</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. <u>See</u> FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (quoting <u>Pinker v. Roche Holdings, Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Phillips</u>, 515 F.3d at 232 (alteration in original) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  <u>See</u> <u>Santiago v. Warminster Township</u>, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  <u>Id.</u> at 130 (alteration in original) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  <u>Id.</u> at 131-32; <u>see</u> <u>Fowler v. UPMC Shadyside</u>, 578

F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556).  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

## III. <u>Discussion</u>

The pending Rule 12(b)(6) motions challenge the sufficiency of the pleadings for all seven counts.  Defendants insist plaintiffs' claims fail because Officer Petrucci had probable cause to believe they committed a crime.  Officer Petrucci also raises a qualified immunity defense.  Ferguson, for her part, invokes immunity under Pennsylvania law.  And Aventura contests vicarious liability on the assumption the claims against Ferguson will be dismissed.  We begin with Ferguson's immunity defense because it is common to plaintiffs' federal and state-law claims.

### A. **Ferguson's Immunity**

Pennsylvania law provides a conditional privilege of immunity to persons who report suspected elder abuse to law enforcement in good faith; immunity does not apply to those who report abuse "in bad faith or with a malicious purpose."  See 35 PA. STAT. AND CONS. STAT. ANN. § 10225.302(d); 6 PA. Code § 15.22(b); see also Collins v. Christie, No. 6-4702, 2007 WL 2407105, at *6 & n.14 (E.D. Pa. Aug. 22, 2007).  Here, plaintiffs squarely allege Ferguson acted in bad faith by intentionally providing Officer Petrucci and the magisterial district judge with false information

to wrongfully bring about their prosecutions.  (See Doc. 1 ¶¶ 60, 81, 86, 88).  We will therefore deny Ferguson's assertion of immunity at this stage.

**B.    Section 1983 Claims**

Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  See 42 U.S.C. § 1983.  The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under Section 1983, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  See Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).  Officer Petrucci does not dispute that he is a state actor, so we must determine whether plaintiffs have adequately alleged violations of their federal rights.

Plaintiffs claim Officer Petrucci initiated criminal proceedings against them without probable cause, thereby violating their Fourth and Fourteenth Amendment rights to be free from false arrest and malicious prosecution.  (See Doc. 1 ¶¶ 73-78).  Plaintiffs further allege Officer Petrucci conspired with Ferguson to bring about their prosecution, and that Blakely Borough acted with deliberate indifference toward the likelihood Officer Petrucci would violate their rights.  (See id. ¶¶ 67-72, 79-83).  We address these claims *seriatim*.

      1.     ***False Arrest (Count II)***

Plaintiffs must plausibly allege they were arrested without probable cause to state a claim for false arrest under the Fourth Amendment.  <u>See</u> <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 634 (3d Cir. 1995) (citing <u>Dowling v. City of Philadelphia</u>, 855 F.2d 136, 141 (3d Cir.1988)); <u>Dull v. W. Manchester Twp. Police Dep't</u>, 604 F. Supp. 2d 739, 750 (M.D. Pa. 2009) (Conner, J.).  False arrest claims cover "the time of detention until the issuance of process or arraignment," at which point a claim for malicious prosecution would be the appropriate cause of action. <u>See</u> <u>Montgomery v. De Simone</u>, 159 F.3d 120, 126 (3d Cir. 1998); <u>accord</u> <u>Noviho v. Lancaster County</u>, 683 F. App'x 160, 166 (3d Cir. 2017) (nonprecedential).  An assertion of "detention without legal process" is therefore essential to maintaining a charge of false arrest.  <u>See</u> <u>Wallace v. Kato</u>, 549 U.S. 384, 389 (2007).  Moreover, a false arrest claim cannot be based upon the mere issuance of a summons.  <u>See</u> <u>Primrose v. Mellott</u>, No. 1:11-CV-835, 2012 WL 2321384, at *3 (M.D. Pa. June 19, 2012) (citing <u>Colbert v. Angstadt</u>, 169 F. Supp. 2d 352, 358-59 (E.D. Pa. 2001)).  Plaintiffs must allege they were formally arrested or experienced a similar restraint on their freedom.  <u>See</u> <u>id.</u> (citing <u>United States v. Lampkin</u>, 464 F.2d 1093, 1095 (3d Cir. 1972); <u>Colbert</u>, 169 F. Supp. 2d at 359).

State criminal proceedings in Pennsylvania typically commence either with "the filing of a complaint, followed by the issuance of a summons or arrest warrant; or by [] a warrantless arrest, followed by the filing of a complaint."  <u>See</u> PA. R. CRIM. P. 502, cmt.  Plaintiffs repeatedly assert Officer Petrucci arrested them and filed "criminal charges" or a "criminal complaint," (<u>see</u> Doc. 1 ¶¶ 12, 59, 83; Doc. 10 at 2,

10, 11-13, 15), but their lack of precision and failure to include any facts about the alleged arrest has engendered much confusion.  Plaintiffs attempt to clarify that "the Complaint does not allege that an arrest warrant was issued, merely that charges were filed."  (See Doc. 10 at 11 n.1).  If that is true, plaintiffs either were subject to a warrantless arrest or they received a summons after charges were filed—but the complaint does not provide a date for the arrest or subsequent arraignment, or any details about their time spent in custody, if any.  (See Doc. 1 ¶¶ 13, 15, 57, 59-60).  The complaint only identifies the date Officer Petrucci filed "criminal charges," (see id. ¶ 12), and when the preliminary hearing was held, (see id. ¶ 17).  Plaintiffs do not allege they were "handcuffed, fingerprinted, taken to a police station, [or] required to post bond."  See Primrose, 2012 WL 2321384, at *3. The court is left to wonder whether plaintiffs were "formally arrested" or merely received a summons without any comparable deprivation of their liberty.  See id.  If the latter, plaintiffs' false arrest claim fails as a matter of law.  Given these factual deficiencies, we will dismiss Count II without prejudice.

### 2.    *Malicious Prosecution (Count III)*

Plaintiffs' malicious prosecution claim similarly falls short.  To state a claim for malicious prosecution, plaintiffs must adequately plead the following elements: (1) defendant commenced a criminal proceeding against them; (2) the proceeding terminated in their favor; (3) defendant "initiated the proceeding without probable cause"; (4) defendant acted with malice or with a purpose apart from bringing plaintiffs to justice; and (5) plaintiffs "suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."  Johnson v. Knorr,

477 F.3d 75, 81-82 (3d Cir. 2007) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).  The fifth element requires plaintiffs to plausibly allege they were held in custody or subject to "some onerous types of pretrial, non-custodial restrictions" like limits on traveling outside the jurisdiction or being required to post bail.  See DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005); see also Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998).  Compulsory attendance at a hearing or trial without more does not rise to the level of an onerous restriction on one's liberty.  See Hanks v. County of Delaware, 518 F. Supp. 2d 642, 651 (E.D. Pa. 2007) (citing DiBella, 407 F.3d at 603).

Here, plaintiffs vaguely allege they "were placed on restricted bail conditions," (see Doc. 1 ¶ 13), but they offer absolutely no details about those conditions.  Nor have they adequately pled that they were held in custody. Plaintiffs cannot satisfy the fifth element of their *prima facie* claim for malicious prosecution on these sparse allegations.  Therefore, we will dismiss Count III without prejudice as well.[1]

---

[1] Officer Petrucci also asserts qualified immunity in response to plaintiffs' federal claims.  A court evaluating a claim of qualified immunity considers two distinct inquiries: whether, viewing the facts alleged in a light most favorable to the plaintiff, defendant violated a constitutional right and, if so, whether that right was "clearly established" at the time of the alleged violation.  See Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 637 (3d Cir. 2015) (quoting Pearson, 555 U.S. at 232). Here, we begin and end our analysis with the first prong because plaintiffs have failed to sufficiently allege a violation of their constitutional rights.  Absent those plausible averments, Officer Petrucci would be entitled to qualified immunity. However, in light of the opportunity for amendment as set forth in our accompanying order, we will defer ruling on qualified immunity pending receipt of an amended complaint.

### 3.   *Civil Conspiracy (Count IV)*

Plaintiffs believe Officer Petrucci and Ferguson conspired to have them prosecuted on false pretenses.  (See Doc. 1 ¶ 83).  A Section 1983 claim for conspiracy "rises and falls" with the underlying constitutional violation.  See Fantone v. Latini, 780 F.3d 184, 191 (3d Cir. 2015), as amended (Mar. 24, 2015) (citing Perano v. Township of Tilden, 423 F. App'x 234, 239 (3d Cir. 2011) (nonprecedential)).  Plaintiffs' conspiracy claim fails because they have not plausibly and specifically alleged a violation of their federal rights for false arrest and malicious prosecution as set forth hereinabove.  We will therefore grant defendants' motions to dismiss Count IV without prejudice.

### 4.   *Municipal Liability (Count I)*

Plaintiffs advance a theory of municipal liability against Blakely Borough. (See Doc. 1 ¶¶ 67-72).  The Supreme Court of the United States has consistently held that municipalities and other local government entities may not be held liable in a Section 1983 suit for the conduct of their employees under a theory of *respondeat superior* liability.  See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997) (citing Monell, 436 U.S. at 692); see also Colburn v. Upper Darby Township, 946 F.2d 1017, 1027 (3d Cir. 1991).  Municipal liability only arises when a government body causes an employee to violate another's constitutional rights through an official policy or custom.  See Monell, 436 U.S. at 690-94; see also Montgomery, 159 F.3d at 126.

Policies and customs may be inferred when a municipality acts with deliberate indifference toward known or obvious risks that improperly trained

employees will violate the rights of people with whom they interact.  See Connick v. Thompson, 563 U.S. 51, 61-62 (2011); see also Vargas v. City of Philadelphia, 783 F.3d 962, 974 (3d Cir. 2015); Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (per curiam).  A plaintiff asserting deliberate indifference based upon failure to train must show "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."  Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999) (footnote and citation omitted).  A demonstrable "pattern of similar [constitutional] violations by untrained employees" typically is necessary to establish deliberate indifference.  See Connick, 563 U.S. at 62.[2]

Plaintiffs' Monell claim suffers from insufficient factual allegations.  For example, the pleadings do not support an inference Blakely Borough issued an official "proclamation, policy[,] or edict" permitting its officers to initiate criminal proceedings or make arrests without probable cause or based primarily upon the influence or wishes of third party employers.  See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003).  Nor does the complaint identify a single

---

[2] A single constitutional violation could suffice to establish municipal liability if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," that policymakers reasonably may be deemed to have acted with deliberate indifference.  See City of Canton v. Harris, 489 U.S. 378, 390 (1989).  Plaintiffs' allegations, which largely emphasize Ferguson's wrongdoing, complicate their ability to plausibly allege a single-violation theory of liability against Blakely Borough.  In any event, given our conclusion that plaintiffs have failed to plausibly allege an underlying constitutional violation, Blakely Borough cannot be held liable on this or any other theory under Monell.

other instance in which Officer Petrucci purportedly arrested someone without

probable cause, despite baldly alleging his "history" of making unlawful arrests.

(See Doc. 1 ¶ 72).  Thus, plaintiffs have not "plausibly alleged a 'pattern' of known

constitutional violations amounting to an unofficial custom."  See Eberhardinger

v. City of York, No. 1:16-CV-2481, 2017 WL 4167642, at *4-5 (M.D. Pa. Sept. 20, 2017)

(Conner, C.J.) (citing Tereo v. Smuck, No. 1:16-CV-1436, 2017 WL 2080193, at *9

(M.D. Pa. May 15, 2017) (Conner, C.J.)).  Because the operative complaint is

factually but not legally deficient, we will grant Blakely Borough's motion to dismiss

plaintiffs' Monell claim without prejudice.

### C.    State Law Claims

Plaintiffs bring ancillary claims under Pennsylvania law for malicious

prosecution, intentional infliction of emotional distress, and vicarious liability.  We

address these claims *seriatim*.

### 1.    *Malicious Prosecution (Count V)*

Under Pennsylvania law, a claim based upon the common-law tort of

malicious prosecution is identical to its federal counterpart except that it does not

require plaintiffs to allege the unlawful act deprived them of their liberty.  See

Henderson v. City of Philadelphia, 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012) (citing

Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 791 (3d Cir. 2000)).  Private

individuals may be liable for knowingly providing false information to an officer

that results in criminal charges against a third party if doing so renders "an

intelligent exercise of the officer's discretion . . . impossible."  See Stevens

v. Sullum, No. 3:20-CV-1911, 2021 WL 2784817, at *13 (M.D. Pa. July 2, 2021)

(quoting Restatement (Second) of Torts § 653 cmt. g (1977)); accord Bradley v. Gen. Accident Ins. Co., 778 A.2d 707, 711 (Pa. Super. Ct. 2001).  Probable cause exists when the facts and circumstances within a police officer's knowledge would "warrant a person of reasonable caution to conclude" the person being arrested committed an offense.  See United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)).  The relevant inquiry is not whether the individual actually committed the crime for which they were arrested, but whether the officer had probable cause to believe so at the time of the arrest.  See Groman, 47 F.3d at 634 (citing Dowling, 855 F.2d at 141).

Defendants reiterate their argument that Officer Petrucci had probable cause to arrest plaintiffs and charge them with a crime.  (See Doc. 9 at 17-18; Doc. 21 at 12-13).  Whether probable cause exists is a question of law, see Fought v. City of Wilkes-Barre, 466 F. Supp. 3d 477, 506 (M.D. Pa. 2020) (citing Simpson v. Montgomery Ward & Co., 46 A.2d 674, 676 (Pa. 1946)), but without the benefit of discovery, it would be premature at this juncture to attempt to determine whether Officer Petrucci had the requisite degree of suspicion when he precipitated plaintiffs' prosecution, see, e.g., Toribio v. Spece, No. 3:10–CV–2441, 2011 WL 6027000, at *3 (M.D. Pa. Dec. 5, 2011).  Plaintiffs allege Ferguson knowingly provided false information to Officer Petrucci to wrongfully incriminate them, (see Doc. 1 ¶¶ 56, 61), that Officer Petrucci "willful[ly], wanton[ly], and intentional[ly]" charged and arrested them without conducting a thorough investigation and despite lacking *prima facie* proof of their *mens rea*, (see id. ¶¶ 58-59, 63-64, 86), and that a neutral magistrate dismissed the charges for insufficient evidence, (see id.

15

¶¶ 17, 85).  Plaintiffs have set forth a plausible claim for malicious prosecution under Pennsylvania law against both Officer Petrucci and Ferguson.  See Merkle, 211 F.3d at 791.  We will deny defendants' motions to dismiss this claim.

### 2. *Intentional Infliction of Emotional Distress (Count VI)*

To state a claim for the common-law tort of intentional infliction of emotional distress ("IIED"), a plaintiff must allege: (1) the defendant's conduct was extreme and outrageous; (2) the conduct caused the plaintiff severe emotional distress; and (3) the defendant acted with the intent to cause such distress or knowing that the same was "substantially certain" to occur.  Brown v. Muhlenberg Township, 269 F.3d 205, 217-18 (3d Cir. 2001) (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. d).[3]  Additionally, "a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct."  Reedy v. Evanson, 615 F.3d 197, 231 (3d Cir. 2010) (quoting Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)).  Plaintiffs' failure to allege they suffered any physical harm is fatal to their IIED claim.  We will therefore dismiss this claim without prejudice.

### 3. *Vicarious Liability (Count VII)*

A plaintiff may hold an employer responsible for the acts or omissions of its employees under Pennsylvania law on a theory of *respondeat superior* when the

---

[3] The Pennsylvania Supreme Court has not yet explicitly recognized the tort of intentional infliction of emotional distress.  See Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000).  Our court of appeals has predicted that the Commonwealth's high court ultimately will adopt the Restatement (Second) of Torts' formulation.  Williams v. Guzzardi, 875 F.2d 46, 50-51 (3d Cir. 1989); see also Mills v. City of Harrisburg, 589 F.Supp.2d 544, 558 n.13 (M.D. Pa. 2008) (citing Taylor, 754 A.2d at 652).

employee's actions "cause injuries to a third party, provided that such acts were committed during the course of and within the scope of the employment." See Bissett v. Verizon Wireless, 401 F. Supp. 3d 487, 492-93 (M.D. Pa. 2019) (quoting Costa v. Roxborough Mem'l Hosp., 708 A.2d 490, 493 (Pa. Super. Ct. 1998)). An employee's conduct is within the scope of employment when "(1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; [and] (3) it is actuated, at least in part, by a purpose to serve the employer." See id. at 493 (quoting R.A. ex rel. N.A. v. First Church of Christ, 748 A.2d 692, 699 (Pa. Super. Ct. 2000)). As discussed above, plaintiffs raise a viable claim against Ferguson for malicious prosecution under Pennsylvania law. The complaint also asserts Ferguson's conduct was within the scope of her employment as Director of Nursing at Aventura's Peckville facility and was intended to shield Aventura from liability. (See Doc. 1 ¶¶ 10, 61). We will therefore deny Aventura's motion to dismiss Count VII to the extent it is predicated upon plaintiffs' state-law malicious prosecution claim.

But plaintiffs concede as a matter of law that Aventura cannot be held vicariously liable for Ferguson's actions with respect to their Section 1983 civil conspiracy claim. (See Doc. 25 at 6); see also Jutrowski v. Township of Riverdale, 904 F.3d 280, 290 (3d Cir. 2018). We will therefore grant Aventura's motion to dismiss that portion of plaintiffs' complaint with prejudice. Insofar as vicarious

liability is based upon plaintiffs' IIED claim against Ferguson, we will dismiss those grounds without prejudice because the underlying insufficiency is factual in nature.

### D.    Punitive Damages

Plaintiffs seek punitive damages from Officer Petrucci, Ferguson, and Aventura.  (See Counts II-VII).  Only Officer Petrucci disputes the propriety of punitive damages.  (See Doc. 9 at 20).  In a Section 1983 action, punitive damages may be available against officials in their individual capacity "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Alexander v. Riga, 208 F.3d 419, 430-31 (3d Cir. 2000) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)).  Punitive damages are also available under Pennsylvania law when a defendant acts with "evil motive or reckless indifference to the rights of others."  See Hutchison *ex rel.* Hutchison v. Luddy, 870 A.2d 766, 770  (Pa. 2005) (quoting Feld v. Merriam, 485 A.2d 742, 747 (Pa. 1984)).  The actor's state of mind "is vital," and their conduct must be "intentional, reckless, or malicious."  See id. (quoting Feld, 485 A.2d at 748).

At present, the claim for punitive damages under Section 1983 fails because plaintiffs have not sufficiently alleged a violation of their federal rights.  But plaintiffs have sufficiently alleged that defendants recklessly and intentionally violated their rights to be free from malicious prosecution under Pennsylvania law. They claim Officer Petrucci initiated criminal proceedings against them knowing he lacked probable cause, (see Doc. 1 ¶¶ 57-59), and Ferguson deliberately lied to incriminate them in furtherance of defendants' common effort to prosecute them.

See id. (¶¶ 56, 60).  These allegations provide a basis for punitive damages.  We will therefore reject Officer Petrucci's efforts to jettison plaintiffs' demand for punitive damages in Count V.

###    E.    Leave to Amend

Courts must generally grant leave to amend before dismissing civil rights claims if a curative amendment is conceivable.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  Plaintiffs also seek leave to add two new claims against Aventura: a Section 1983 civil conspiracy claim and a state law failure to supervise claim.  (See Doc. 25 at 6).  Many of the deficiencies identified herein are factual and thus potentially curable, and the new claims plaintiffs identify arise out of the same factual circumstances.  Accordingly, we will grant plaintiffs leave to amend consistent with this memorandum.

## IV.    Conclusion

We will grant in part and deny in part defendants' motions to dismiss plaintiffs' complaint.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    October 17, 2023